184 So.2d 148

Cecil Ray BROWN et al.

v.

George MORRIS et al.

7 Div. 694.

Supreme Court of Alabama.

March 3, 1966.

R. Kent Henslee, Gadsden, for appellants.

Rowan S. Bone and Hugh H. Smith, Gadsden, for appellees.

242

PER CURIAM.

Complainants Cecil Ray Brown and Mary M. Brown, owners of Lot No. One, Block No. A in Mitchell Park Supplemental Addition No. 2 to Gadsden, Alabama, subject to certain building restrictions, filed their original bill, with a subsequent amendment thereto, in the circuit court of Etowah County, in equity, against respondents, George Morris, Andy Pierson, et al., the named Morris and Pierson, being the owners of Lot No. One in Block C, same subdivision supra, to enjoin and restrain them, both temporarily and permanently, from erecting upon said Lot No. One in Block C, supra, any building other than a one-family residence, as provided in the restrictions and deeds to said property, and from using said property for any other purpose. This appeal is from a decree denying relief.

It appears from the allegations and proof that respondents, Morris and Pierson, were at the time of suit erecting a commercial building on their property, alleged to be in violation of covenants in their deed. One of the above lots is across the street from the other, and both were subject to restrictive covenants (written in their deeds) by Lookout Land Company, dated December 12, 1956, and recorded in Miscellaneous Record 15, page 355, in the probate office of Etowah County, Alabama, wherein the lots are located. The Browns acquired title under their deed on July 25, 1961, while

Morris and Pierson acquired their title by deed dated May 2, 1964.

It is also averred that all the property in the Mitchell Park Supplemental Addition, supra, is subject to certain building restrictions, and that respondents purchased subject to said building restrictions.

It appears from the pleading and in the evidence that the recorded Lookout Land Company covenants, running with the land, contained the provisions:

"1. * * * No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling * * *.

"2. Dwelling Cost, Quality and Size. * * * (Here a minimum cost of each dwelling appears.)

"3. Building Location. * * * (Here follows certain restrictions as to the location of the building on each lot.

"4. Lot Area and Width. * * * (This section fixes minimum area and width of each lot upon which a residence may be built. Where a lot is subdivided, this rule applies.

It appears that defendants (appellees) were constructing their building solely on land that was zoned by law in 1948 for business purposes. Part of the building being constructed was on a lot not a part of the restricted subdivision. The lot restricted for a residence, due to shape and an easement for electric power use, is not suitable for a building, so appellees contend. The restrictive covenants were placed on the land in 1956.

Appellees contend that the evidence shows that in the subdivision here in question, there were at least eight houses which were built on lots in violation of the restrictions relating to location of residences thereon, and that one of these houses is right next door to appellants.

The parties to this appeal stipulated that most of these houses had been built prior to the time appellants bought their home, and, therefore, the violations were committed prior to the time of such purchase. A casual look, so appellees here contend, would have revealed to appellants these locational violations. No action was taken by appellants or anyone to enforce these restrictive covenants as to such violations.

The restrictions here involved have for their purpose a uniformity as to character of buildings to be placed on the lots—only single family dwellings; a uniformity as to the cost, quality and size; uniformity as to location of the residences on the lots of the subdivision as to the size of the lots.

■ There is no evidence that there has been any deviation, invasion or waiver by any of the owners of the restricted lots as to the type or character of buildings allowed or permitted by the covenants on these lots. Owners might suffer deviation as to locational uniformity on the lots, and subject themselves to a contention that they had waived compliance in this respect, but we do not think such contention, if valid and meritorious should overflow into another area of uniformity, namely, the character and type of buildings allowed. We pretermit deciding the effect of failing to take action for compliance in the area of uniformity as to location of residences in accord with the covenant. We merely hold that such failure does not ripen into a waiver of restrictions as to the type and character of buildings that may be erected on the lots.

To hold otherwise would require the lot owners or purchasers in a subdivision impressed with covenants, as here, to be on the alert for locational deviations and to bring suit forthwith lest there be an accumulation of locational violations that would open the flood gates to a complete abandonment of all restrictive covenants affecting the subdivision under consideration. We don't think such bird-dogging and legal action is required in all facets of restrictive covenants affecting the area, in order to preserve the integrity of the covenants not related to the deviations. It was held in Thorburn v. Morris, 75 A. 757 (N.J.), that parties may abandon a scheme of restrictions as to a part of their property, and maintain it as to other portions. Certainly, appellants have a right to maintain the restrictions as to the type and character of buildings to be placed on the restricted lots even though they should abandon the restrictions as to the location of residences on the restricted lots. Cassidy v. Kruvant, 97 N.J.Eq. 372, 127 A. 339; Hoffman v. Balka, 175 Pa.Super. 344, 104 A.2d 188; Price v. Anderson, 358 Pa. 209, 56 A.2d 215, 2 A.L.R.2d 593.

Appellees here contend that the property upon which appellees were constructing their building, contrary to the restrictions in their deed, was zoned by the City of Gadsden for commercial use some years before the land was subdivided and the present restrictions placed thereon.

■ The restrictions placed on the property by the owners when it was subdivided are more restrictive than those prescribed by the zoning ordinance. The ordinance permits the property to be used for a single-family residence in addition to business use. Private restrictions subsequent to valid zoning restrictions, may be more but not less restrictive. Under such circumstances, the restrictions here at issue will prevail. Bluett v. Cook County, 19 Ill. App.2d 172, 153 N.E.2d 305; Connelly v. Morris, 125 N.E.2d 765 (Ohio Com.Pl.).

It has been held by this court in McKee v. Club-View Heights, 230 Ala. 652, 654, 162 So. 671(1, 2), 673, as follows:

"It is well settled by the repeated decisions of this court that the owner of land, in making a sale thereof, may retain an easement or impose a servitude in the land sold, and, when not in restraint of trade, may retain in himself certain uses, which would otherwise pass to the grantee. 'Such retention,

or limitation of the use, being a condition upon which the estate is acquired, attaches as an infirmity in the estate itself, and as a privilege or easement in the estate of the grantor, in whose favor the limitation is imposed.' Webb v. Robbins, 77 Ala. 176, 183. The grantee in accepting the deed containing such conditions or covenants accepts the title encumbered thereby, and is bound as though he had signed the conveyance, and 'he cannot complain, for he purchased and paid for only a qualified use.' Morris & Morris v. Tuskaloosa Manufacturing Co., 83 Ala. 565, 571, 3 So. 689, 691."

Also, in Thrasher v. Bear, 239 Ala. 438, 440, 195 So. 441, 443, we observed:

"The respective rights of the parties in such premises to enforce building restrictions against another grantee is based on the fact that such scheme constitutes a part of the consideration. Vol. 4, Thompson on Real Property, §§ 3399, 3441; 18 C.J. p. 397, § 463."

Also, we said in Scheuer v. Britt, 218 Ala. 270, 118 So. 658:

"In such cases the equitable right to enforce such mutual covenants is rested on the fact that the building scheme forms an inducement to buy, and becomes a part of the consideration. The buyer submits to a burden upon his lot because of the fact that a like burden is imposed on his neighbor's lot, operating to the benefit of both, and carries a mutual burden resting on the seller and the purchasers. * * *"

■ We hold that the trial court erred in denying relief to complainants and in dismissing their bill of complaint, as amended. On remandment of this cause, the trial court upon finality of this opinion will forthwith enter a decree enjoining the respondents, their agents, servants or employees, their heirs and successors, sublessees or assigns from erecting upon said property, described in the bill of complaint, any building other than a one-family residence as provided in the restrictions and the deeds to said property, and from using said property for any other purpose.

The decree of the trial court is reversed and the cause remanded for compliance with this opinion.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Reversed and remanded with directions.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.